```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
                    SOUTHERN DIVISION

SHIRLEA WILLIAMS,                   CIVIL CASE NO. 03-40140

              Plaintiff,            HONORABLE PAUL V. GADOLA
v.                                  U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,

              Defendant.
_____/
```

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I.   INTRODUCTION**

On December 7, 2004, the Court conducted a bench trial in this case solely on the issue of liability. The parties each submitted post-trial briefs and proposed findings of fact and conclusions of law. The Court now issues its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. These findings of fact and conclusions of law represent the Court's consideration of all of the admissible evidence in light of the pertinent law, the Court's observation of the witnesses, and its evaluation of their demeanor, qualifications, and credibility. See United States v. Mandycz, 359 F. Supp. 2d 601, 603 (E.D. Mich. 2005 (Gadola, J.) (citation omitted). Every finding of fact that may be construed to incorporate a conclusion of law is adopted as a conclusion of law. See id. Every conclusion of law that may be construed to incorporate a finding of fact is adopted as a finding

of fact.  See id.  The subheadings used are for convenience only. See id.  If a finding of fact or conclusion of law is pertinent to any determination other than that indicated by the heading under which it appears, it is adopted as a finding of fact or conclusion of law applicable to such other determination or determinations as may be appropriate.  See id.

**II.  FINDINGS OF FACTS**

1. This case arises out of an incident at the intersection of Grand River Avenue and Northlawn Street on April 20, 2001. Tr. at 10-11.
2. The roads were wet on the day of this incident.  Pl. Ex. 2.
3. Grand River Avenue is a road that runs on a diagonal from the southeast to the northwest.  Pl. Ex. 1.
4. There are seven lanes on Grand River Avenue: a median lane for turning, and three lanes (left, center, and right) proceeding in each direction.  Pl. Ex. 1.
5. Northlawn Street is a residential, two-lane road that runs north and south.  Pl. Ex. 1.
6. Due to the direction of the two streets, they are not perpendicular, but rather intersect at an unusual angle.  Pl. Ex. 1.
7. On April 20, 2001, Plaintiff Shirlea Williams was twenty-two years of age.  Tr. at 13.

8.  Plaintiff had obtained her driver's licence at age sixteen. Tr. at 13.

9.  Between approximately 1:15 p.m. and 1:30 p.m., Plaintiff was driving northwest on Grand River Avenue in a black 1992 Chevy Cavalier. Tr. at 9, 26; Pl. Ex. 2.

10. Plaintiff was going home from work for lunch. Tr. at 9.

11. Plaintiff was driving in the left lane of Grand River Avenue. Tr. at 40-41.

12. The speed limit on Grand River Avenue is 35 miles per hour. Tr. at 10.

13. Plaintiff was driving at a rate of approximately 30 miles per hour. Tr. at 10, 21-23.

14. Between approximately 1:15 p.m. and 1:30 p.m., Debra Jones was traveling south on Northlawn Street.

15. Ms. Jones was approximately forty-three years of age on the date of the incident. Tr. at 35.

16. Ms. Jones obtained her driver's license at age twenty-three. Tr. at 36.

17. Ms. Jones was employed as a letter carrier for the United States Postal Service. Tr. at 36.

18. Ms. Jones was driving an "LLV" postal delivery vehicle. Tr. at 37-38.

19. The LLV has the driver on the right side of the vehicle,

      sitting higher than other automobiles, and is a cube shape. Tr. at 12, 37-38, 47.

20. Ms. Jones approached the stop sign at the intersection of Northlawn Street and Grand River Avenue. Tr. at 37.

21. Ms. Jones intended to turn left onto Grand River Avenue, to proceed southeast. Tr. at 39.

22. She was intending to go to the post office on Grand River Avenue to use the restroom. Tr. at 37.

23. As she approached the intersection, cars were parked in the right lane of northwest-bound Grand River Avenue on both sides of Northlawn Street. Tr. at 38; see Pl. Ex. 1, 2.

24. Ms. Jones stopped at the stop sign. Tr. at 37.

25. Due to the parked cars, the fact that the driver is on the right side of the postal vehicle, and the unusual angle of the intersection, Ms. Jones advanced into the right lane of northwest-bound Grand River Avenue to observe traffic. Tr. at 37, 38; Pl. Ex. 1.

26. Ms. Jones looked left and did not see any traffic. Tr. at 39.

27. Ms. Jones looked right and did not see any traffic. Tr. at 39.

28. Ms. Jones inched her postal vehicle forward, so that it was approximately half-way into the center lane of northwest-bound Grand River Avenue. Tr. at 39, 11.

29. Ms. Jones then looked left again to check for traffic. Tr. at 39.

30. Ms. Jones then noticed Plaintiff's car approaching in the left lane. Tr. at 39, 40-41. Although Plaintiff claims that she was driving in the center lane, the Court does not find this claim to be credible. See Tr. at 19-20 (discussion on cross examination regarding why, if Plaintiff were traveling in the center lane, Plaintiff did not simply move into the left lane to avoid the postal vehicle).

31. Ms. Jones applied the brakes and brought the postal vehicle to a stop. Tr. at 39.

32. Plaintiff first noticed the postal vehicle when she was "[a]bout a car length" from the postal vehicle. Tr. at 12, 17-18.

33. Upon seeing the postal vehicle in the center lane, Plaintiff took her foot off of the accelerator. Tr. at 18.

34. Plaintiff did not immediately apply the brakes. Tr. at 20.

35. Then, thinking that the postal vehicle might impact her own vehicle, Plaintiff applied the brakes. Tr. at 19.

36. Plaintiff's vehicle then swerved, turned approximately 180 degrees and collided with a parked vehicle in the right lane of northwest-bound Grand River Avenue. Tr. at 11, 41; Pl. Ex. 2.

37. Plaintiff's impact with the parked vehicle caused a chain reaction of impacts with two other parked vehicles. Pl. Ex. 2.

38. There was no contact between Plaintiff's vehicle and the postal delivery vehicle. Tr. at 31, 42; Pl. Ex 2 (State of Michigan Traffic Crash Report notes "0" (zero) damage to postal vehicle).

39. If Plaintiff had continued to proceed straight in the left lane, Plaintiff would not have collided with the postal vehicle. Tr. at 41-42.

40. Ms. Jones completed her left-hand turn onto southeast-bound Grand River Avenue. Tr. at 42.

41. Having noticed the accident, Ms. Jones then made a U-turn, proceeded past the accident, and parked her postal vehicle. Tr. at 42-43.

### III. CONCLUSIONS OF LAW

42. Michigan law applies in this case. <u>See</u> Pl. Complaint.

43. Regarding a negligence claim, "the plaintiff has the burden of proof on each of the following" elements: (1) that the plaintiff was injured, "that the defendant was negligent in one or more of the ways claimed by the plaintiff," and (3) that the negligence was a proximate cause of the [injuries] to the plaintiff." Mich. Civil Jury Instructions 16.02

(2004).

44. In this case, the parties agreed to bifurcate the bench trial. Therefore, the only issue before the Court at this time is liability, not damages. See Tr. at 53.

45. Plaintiff, in her proposed findings of fact and conclusions of law, suggests that this Court apply the doctrine of "negligence per se" to the liability issue in this case. See Pl. Prop. at 5-6.

46. As the Michigan Court of Appeals has recently noted, however, "Michigan does not subscribe to the doctrine of negligence per se." Candelaria v. B.C. Gen. Contractors, Inc., 236 Mich. App. 67 (1999) (citing Zeni v. Anderson, 397 Mich. 117, 128-129, 243 N.W.2d 270, 276 (1976)).

47. Instead of negligence per se, "the real Michigan rule as to the effect of violation of a penal statute in a negligence action is that such violation creates only a prima facie case from which the [fact finder] may draw an inference of negligence." Zeni v. Anderson, 397 Mich. 117, 128-129, 243 N.W.2d 270, 276 (1976).

48. In this case, Plaintiff proposes that the postal worker violated Michigan Compiled Law § 257.649(6), which requires a driver to yield to vehicles with the right of way. See Pl. Proposed Findings at 5-6; Mich. Comp. Laws § 257.649(6). This

statute states:

> the driver of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the crosswalk on the near side of the intersection, or if there is not a crosswalk shall stop at a clearly marked stop line; or if there is not a crosswalk or a clearly marked stop line, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. After having stopped, the driver shall yield the right of way to a vehicle which has entered the intersection from another highway or which is approaching so closely on the highway as to constitute an immediate hazard during the time when the driver would be moving across or within the intersection.

49. Plaintiff's vehicle did have the right of way. See ¶¶ 9, 14, 20.

50. The intersection does not appear to have a crosswalk or stop line. Pl. Ex. 1.

51. Ms. Jones did stop the postal vehicle at the stop sign, in compliance with the statute. See ¶ 24.

52. Given the angle of the intersection, her right hand drive vehicle, and the parked cars, however, this stop was insufficient to observe oncoming traffic. See ¶ 25.

53. The statute therefore permitted Ms. Jones to advance the postal vehicle to the "point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway." Mich. Comp. Laws § 257.649(6).

54. In advancing half-way into the center lane, Ms. Jones went

beyond the "point nearest the intersecting roadway where the driver has a view of approaching traffic." ¶ 19, 25; Mich. Comp. Laws § 257.649(6).

55. Thus, Ms. Jones did violate Michigan Compiled Law § 257.649(6).

56. Plaintiff also claims that Ms. Jones violated Federal Motor Carrier Regulation § 392.1 and 392.14.  These regulations effectively mandate the use of "extreme caution in the operation of a commercial motor vehicle [] when hazardous conditions [] adversely affect visibility or traction." Reg. § 392.14.

57. Although the pavement was wet on the day in question, the Court concludes that the conditions did not constitute hazardous conditions, and therefore this regulation does not apply.  See ¶ 2, 56.

58. Michigan law provides that

> [i]n an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section [600.6304], in direct proportion to the person's percentage of fault.  In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

Mich. Comp. Laws 600.2957.

9

59. The Court must therefore apportion the fault between Plaintiff and Ms. Jones, the postal worker. ¶ 58.

60. As discussed above, Ms. Jones advanced half-way into the center lane of Grand River Avenue, which was beyond the "point nearest the intersecting roadway where the driver has a view of approaching traffic." ¶ 25; Mich. Comp. Laws § 257.649(6).

61. The Court will therefore apportion some fault to Ms. Jones.

62. Plaintiff was also at fault. Plaintiff testified that she only noticed the postal vehicle when she was "[a]bout a car length" from the postal vehicle. ¶ 32; Tr. at 12, 17-18.

63. The Court concludes that Plaintiff's failure to observe the postal vehicle sooner as it was inching into the intersection was negligent inattention. ¶ 32; Tr. at 12, 17-18.

64. Additionally, Plaintiff's reaction to seeing the postal vehicle was negligent. Specifically, Plaintiff's sudden swerving of her vehicle, when she could have proceeded straight in the left lane, was negligent. ¶ 30, 33-36, 39.

65. Accordingly, the Court concludes that fault should be apportioned as follows:

    Plaintiff is 66.67 percent at fault.

    Ms. Jones, the postal worker, is 33.33 percent at fault.

66. The damages to be apportioned based on this finding will be determined at a subsequent proceeding.

**IV. CONCLUSION**

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff is determined to be 66.67% at fault and Ms. Jones is 33.33% at fault for the incident.

**IT IS FURTHER ORDERED** that the bench trial for the remaining issue of damages shall be set for the trial term beginning **October 3, 2005**.

**IT IS FURTHER ORDERED** that any motions in limine for the damages portion of the trial shall be filed by **September 19, 2005**.

**SO ORDERED.**

Dated: August 16, 2005                    S/Paul V. Gadola
                                          HONORABLE PAUL V. GADOLA
                                          UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on ___August 17, 2005___, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                    Robert W. Haviland                              , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____Joseph Dedvukaj; Wendy Wiedemann Hudson_____.

                                          s/Ruth A. Brissaud
                                          Ruth A. Brissaud, Case Manager
                                          (810) 341-7845